UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DAMARISZ L. SANTIAGO-MARRA,     :

    Plaintiff,              :

V.                              :     CASE NO. 3:09-CV-798(RNC)

CSC HOLDINGS, INC., a/k/a       :
CABLEVISION OF CONNECTICUT      :
a/k/a CABLEVISION OF SOUTHERN   :
CONNECTICUT,                    :

    Defendant.              :

RULING AND ORDER

Plaintiff Damarisz L. Santiago-Marra brings this action against her former employer, CSC Holdings, Inc. ("Cablevision", claiming principally that it terminated her employment in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111, <u>et seq</u>. Defendant has moved for summary judgment arguing that plaintiff's claims are largely time-barred and the evidence in the record regarding relevant events within the limitations period would not permit a reasonable jury to find in her favor. I agree with the defendant's arguments and therefore grant the motion for summary judgment.

I.   <u>Summary Judgment</u>

Summary judgment may be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). To avoid summary judgment, the plaintiff must point to evidence that would permit

a reasonable juror to return a verdict in her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). In determining whether this standard is met, the evidence must be viewed in a manner most favorable to the plaintiff. Id. at 255; Sheppard v. Beerman, 317 F.3d 351, 354 (2d Cir. 2003).

II. Facts

The summary judgment record, viewed most favorably to the plaintiff, would permit a reasonable jury to find the following. In May 1987, Cablevision hired plaintiff as a clerical worker in its sales division. In June 1994, she was transferred to the customer service division, where she worked as a lead customer relations coordinator until her termination in September 2006.

As a lead customer relations coordinator, plaintiff handled incoming customer calls, including frustrated customer calls referred to her by subordinates. She also worked side-by-side with her subordinates to "coach" them through calls.

During her time at Cablevision, plaintiff was granted leaves of absence under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq., as well as non-FMLA leaves, to recover from surgeries and address various medical conditions. She took more than fifteen block leaves of absence, totaling approximately twenty months in duration, plus numerous intermittent leaves.

On March 12, 2006, plaintiff initiated a nearly six-month leave of absence that ended with her termination on September 6,

2006. Before the leave commenced, plaintiff had used all the leave she could receive under the FMLA. But defendant grants employees two months of leave above and beyond the leave allowed by the FMLA if the request is properly documented. Plaintiff therefore requested a non-FMLA leave of absence. Defendant responded that it needed supporting medical documentation by March 16, 2006. Plaintiff thinks she requested supporting documentation from her physician, Dr. Deal, but her request for leave was denied because no documentation was submitted. Plaintiff remained out of work.

On March 28, 2006, plaintiff again requested a leave of absence. In response, defendant extended the deadline for medical documentation to evaluate the request until April 12, 2006. Plaintiff met with Dr. Deal on March 30 and April 28, 2006. Dr. Deal did not know that she had been on leave from work. Plaintiff thinks she submitted documentation to the defendant following her visits with Dr. Deal but she is uncertain and has no record of such a submission.[1] On May 3, 2006, defendant denied plaintiff's request for leave based on her failure to submit documentation and ordered her to return to work by May 7, 2006.

---

[1] Plaintiff suspects that defendant may have misplaced her documentation because she recalls faxing documents to defendant's human resources department on prior occasions then being told the documents had not been received.

3

On May 8, 2006, plaintiff met with Dr. Deal. He wrote a letter on her behalf stating that she would need to be out of work for approximately one week for treatment. Plaintiff remained out of work.

When plaintiff did not return to work by June 5, 2006, defendant called Dr. Deal. Dr. Deal reported that plaintiff had no physical limitations except pain, which was subjective as to its extent. He did not certify that plaintiff needed to be out of work. Plaintiff remained out of work.

On August 8, 2006, defendant contacted Dr. Deal for another update. He reported that he could not certify a need for leave unless plaintiff saw a pain specialist.

Plaintiff recalls contacting defendant in the middle of August 2006 and reporting that she would be able to return to work on September 15, 2006. Defendant denies receiving the call.

On September 5, 2006, defendant again spoke with Dr. Deal about plaintiff's status. Dr. Deal reported that plaintiff had cancelled an appointment with him on August 29 because of pain, that he had not seen her in a month and that she had no future appointments scheduled. Dr. Deal did not certify that plaintiff needed medical leave.

The following day, plaintiff's employment was terminated by Mark Miller, defendant's manager of human resources. Plaintiff filed a complaint with the Equal Employment Opportunity

Commission on February 13, 2007, and commenced this suit on April 15, 2009. Plaintiff states that she was unable return to the workforce until June 2008 because she was "incapacitated due to [her] disability."

III. Discussion

Discriminatory Discharge under the ADA

Plaintiff claims that defendant terminated her employment because of her disability in violation of the ADA. To establish a prima facie case of discriminatory discharge under the ADA, plaintiff must show that: 1) defendant is subject to the ADA; 2) plaintiff was disabled within the meaning of the ADA; 3) plaintiff could perform the essential functions of her job, with or without reasonable accommodation; and 4) she was fired because of her disability. See Ryan v. Grae & Rybicki, P.C., 135 F.3d 867, 869-70 (2d Cir. 1998). In moving for summary judgment, defendant focuses on the second, third and fourth elements.

Under the ADA, a disability is defined as "a physical or mental impairment that substantially limits one or more . . . major life activities." 42 U.S.C. § 12102(2)(A). An employee is disabled if she cannot perform a major life activity or is significantly restricted as to the condition, manner or duration under which she can perform it compared to an average person in the general population. See 29 C.F.R. § 1630.2(j)(1)(i) and (ii). Plaintiff claims that she was disabled due to severe pain.

5

Defendant contends that the pain plaintiff suffered does not qualify as a disability. In Addoo v. NYC Bd. of Ed., 268 F. App'x 141, 142-43 (2d Cir. 2008), the Second Circuit found that temporary leg and back pain did not rise to the level of a disability under the ADA. In the social security context, the Second Circuit has recognized that severe pain may be disabling if it precludes gainful employment. Cf. Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983). In view of Dr. Deal's report that plaintiff had no limitations except pain, which was subjective as to its extent, plaintiff may have difficulty proving that she had a disability under the ADA. For purposes of this ruling, however, I assume without deciding that she can meet her burden on this element of her claim.

Plaintiff's discriminatory discharge claim fails because she is unable to prove that she could perform the essential functions of her job. It is undisputed that the essential functions of her job included working side-by-side with other customer service representatives at the workplace. Plaintiff has stated under oath in response to an interrogatory that she was incapacitated due to her disability until June 2008. Given her sworn statement that she was incapacitated, she is unable to prove that she could perform the essential functions of her job. See Mitchell v. Washingtonville Cent. School Dist., 190 F.3d 1, 9 (2d Cir. 1999)(plaintiff estopped from showing he could perform essential

functions of his job).

Even if plaintiff were not estopped from showing that she could perform the essential functions of her job, her discriminatory discharge claim would still fail because the record does not support a reasonable finding that she was terminated due to her disability. Plaintiff must show that discriminatory animus was a significant factor in the decision to terminate her employment. See Quad Enterprises Co. v. Town of Southold, 369 F.App'x 202, 207 (2d Cir. 2010). She relies on the timing of the termination.[2] Accepting as true her disputed allegation that she gave the defendant notice sometime in mid-August 2006 of her intention to return to work on September 15, 2006, the timing of her termination can be viewed with suspicion. But there is no evidence that Mark Miller, the individual who made the decision to terminate the plaintiff's employment, knew she had called with an anticipated return date of September 15. In the absence of evidence showing that he knew of her return date, the timing of the discharge provides weak evidence of discrimination.

Moreover, plaintiff is unable to show that defendant's stated reason for the termination is pretextual. Defendant has stated that the plaintiff's employment was terminated on

---

[2] Plaintiff has no direct evidence of discriminatory animus. Nor does she identify a person who was similarly situated to her but treated better by the defendant.

7

September 6, 2006, because she had taken an extended leave of absence, her date of return was indefinite, and it could no longer hold her position open. Defendant had learned from Dr. Deal that he could not certify the plaintiff for leave unless she saw a pain specialist, that he had referred her to a pain specialist but she had not followed up with a visit, that she had just missed an appointment with him reportedly due to pain, that she had no further appointments scheduled with him, and that he was unable to certify her request for continued leave. Given this state of affairs, months after plaintiff had used up all her leave, defendant was objectively justified in concluding that it had a right to terminate her employment. The objective reasonableness of this conclusion is bolstered by plaintiff's sworn statement in her interrogatory response that she was incapacitated for another two years.

Denial of Reasonable Accommodation under the ADA

Plaintiff claims that defendant violated the ADA by failing to provide her with a reasonable accommodation. She bears the burden of establishing a prima facie case with regard to this claim as well. This burden requires her to show that: (1) she is a person with a disability under the ADA; (2) an employer covered by the statute had notice of the disability; (3) with reasonable accommodation, she could perform the essential functions of the job at issue; and (4) the employer failed to provide the

accommodation.  See Graves v. Finch Pruyn & Co., Inc., 457 F.3d 181, 184 (2d Cir. 2006).  In moving for summary judgment on this claim, defendant focuses on the first and third elements, both of which have been discussed above in connection with the discriminatory discharge claim.

Plaintiff contends that defendant failed to accommodate her by rejecting her request to work reduced hours and her request to work from home.  These claims are time-barred.  Under the ADA, an EEOC charge must be filed within 300 days of the alleged discrimination.  See Cherry v. City of New York, 381 F. App'x 57, 58 (2d Cir. 2010).  Plaintiff last sought to work a reduced schedule in September 2004 and last requested to work from home in December 2005.  As mentioned above, her EEOC charge was filed in February 2007.

Plaintiff's papers can be construed as alleging that defendant was obliged to provide her with a reasonable accommodation in September 2006 in the form of a continued leave of absence.[3]  There is no evidence that plaintiff requested such an accommodation.  Moreover, defendant had no assurance that additional leave would enable plaintiff to perform the essential functions of her job.  See Graves v. Finch Pruyn & Co., Inc., 353 F.App'x 558, 561 (2d Cir. 2009)(plaintiff failed to make prima

---

[3] Employers do not have a duty to create and provide a job for a disabled individual.  Mitchell v. Washingtonville Central School District, 190 F.3d 1, 9 (2d Cir. 1999).

9

facie case because he made no showing that his employer "had any assurance whatsoever that the accommodation would allow [him] to perform the essential functions of [his] job."). Apart form the phone call plaintiff claims to have made sometime in mid-August about her return to work, she had no communication with the defendant. Based on defendant's communications with Dr. Deal discussed above, it had no reason to think plaintiff would be able to successfully return to work. Lacking such assurance, it was not obliged to grant her additional leave. See id.

ADA Retaliation

Plaintiff's papers can also be construed to allege that she was terminated in violation of the anti-retaliation provision of the ADA. See 42 U.S.C. § 12203(a)("[n]o person shall discriminated against any individual because such individual has opposed any act or practice made unlawful by this chapter . . . ."). To establish a prima facie case, plaintiff must show the following: (1) she engaged in protected activity; (2) the employer was aware of the activity; (3) the employer took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity. See Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 292 (2d Cir. 1998). To the extent plaintiff is attempting to make a claim for ADA retaliation, she produces no evidence that she engaged in protected activity, nor any evidence of a

10

causal connection between any such activity and her termination.

The FMLA

Plaintiff's submissions can be read as attempting to allege a violation of the FMLA. The FMLA provides that an employee is "entitled to a total of 12 workweeks of leave during any 12-month period" when the employee is "unable to perform the functions of [her] position" as a result of "a serious health condition." 29 U.S.C. § 2612. When an employee is unable to return to her position at the end of 12 weeks of FMLA leave, she has no right to be restored to her position under the FMLA. See Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 162-63 (2d Cir. 1999). To be timely, a claim alleging a violation of the FMLA must be filed within two years after the "last event constituting the alleged violation" unless the violation was "willful." 29 U.S.C. § 2617(c). A "willful" violation occurs when an employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FMLA]." Porter v. New York University Law School, 392 F.3d 530, 531 (2d Cir. 2004) (citations omitted).

It is undisputed that plaintiff received more leave than the 12 weeks to which she was entitled under the FMLA. It is also undisputed that she was unable to return to work when her FMLA leave expired. Because defendant had no legal obligation under the FMLA to grant her additional leave, any such claim fails as a

11

matter of law.  In addition, because the complaint in this action was filed more than two years after the termination of plaintiff's employment, the claim is time-barred in any event as there is no evidence of a willful violation of the FMLA.

Plaintiff has alleged that defendant retaliated against her for exercising rights under the FMLA.  To establish a prima facie case of retaliation under the FMLA, plaintiff must establish that: 1) she exercised rights protected by the FMLA; 2) she was qualified for her position; 3) she suffered an adverse employment action; and 4) the adverse employment action gives rise to an inference of discriminatory intent.  <u>Potenza v. City of New York</u>, 365 F.3d 165, 168 (2d Cir. 2004).

Plaintiff is unable to establish a prima facie case of FMLA retaliation.  She does not present any facts connecting her termination to her exercise of rights granted by the FMLA.  It is undisputed that defendant returned plaintiff to her position after FMLA leaves without penalty.  Plaintiff's retaliation claim also is time-barred under 29 U.S.C. § 2617(c).

<u>Title VII Discrimination and Retaliation</u>

Plaintiff has alleged that she was subjected to discrimination in the workplace because she is Hispanic in violation of her rights under Title VII.  To be able to sue under Title VII, a plaintiff must first submit a charge of discrimination to the EEOC "within 300 days of the alleged

12

discrimination." Butts v. NYC Dep't of Housing Preservation and Development, 307 F. App'x 596, 597-98 (2d Cir. 2009). Plaintiff filed her EEOC complaint on February 13, 2007; therefore, any violation of Title VII must stem from an adverse employment action that occurred on or after April 19, 2006. Plaintiff did not return to work after March 12, 2006. Accordingly, any Title VII claim is time-barred.

III. Conclusion

The motion for summary judgment (doc. # 46) is hereby granted. The federal claims are dismissed with prejudice. The court declines to exercise jurisdiction over the state law claims, which are dismissed without prejudice. The Clerk may close the file.

So ordered this 11th day of May 2011.

/s/ RNC<br>Robert N. Chatigny<br>United States District Judge